# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOSEPH ESKRIDGE,** ) | |
|       **Plaintiff,** ) | |
| ) | |
|   v. ) | C.A. No. 06-193 Erie |
| ) | District Judge Cohill |
| **MS. PETERS, et al.,** ) | Magistrate Judge Baxter |
|       **Defendants.** ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.    RECOMMENDATION**

It is respectfully recommended that Defendants' motion for summary judgment [Document # 24] be granted in part and denied in part. More specifically, the motion to dismiss should be denied as to the excessive force claim against Defendant Peters and granted in all other respects. Defendants Jadlocki, Plunkett, McCloskey, Reifer and Wilt should be dismissed from this action.

**II.    REPORT**

    **A.    Relevant Procedural History**

On August 30, 2006, Plaintiff Joseph Eskridge, a state inmate currently incarcerated at the State Correctional Institution at Forest ("SCI-Forest"), filed this *pro se* action, raising civil rights claims. Named as Defendants are: Ms. Peters, Captain Jadlocki, Sergeant Plunkett, Officer McCloskey, Mrs. Rebecca Reifer, Lieutenant Wilt, all current or former employees of the SCI-Cresson, where Plaintiff had previously been incarcerated. Plaintiff seeks damages as a result of being assaulted by his teacher at SCI-Cresson. Plaintiff alleges violations of his rights

1

under the First, Eighth and Fourteenth Amendments to the Constitution.

Defendants have filed a motion for summary judgment [Document # 24]. Plaintiff has filed briefs in opposition to the pending motion [Documents ## 31 and 32] and Defendants have filed a reply brief [Document # 34]. The issues are ripe for disposition by this Court.

### B. Standards of Review

#### 1. *Pro se* Litigants

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

#### 2. Motion for summary judgment

Plaintiff's *pro se* status, however, does not affect the standard which governs our review

of motions for summary judgment. Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Id.

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. See Fed.R.Civ.P. 56(c); Krouse v. American Sterilizer Company, 126 F.3d 494, 500 n.2 (3d Cir. 1997). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990). Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) (quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990)).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. Company v. Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers

to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will affect the outcome of the case under applicable law. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986). Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." Firemen's Ins. Company of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 247-249.

### C.     Relevant Facts

The incident giving rise to his lawsuit occurred on December 8, 2004, while the Plaintiff was in a classroom building at SCI-Cresson. Instead of paying attention to the day's lesson, Plaintiff was writing a letter during class. Plaintiff's instructor, Defendant Peters, asked Plaintiff to cease writing the letter and to open his textbook. Some discussion ensued. Plaintiff indicated that he did not feel like doing mathematics, and the instructor indicated that she did not relish being at work, but showed up anyway. Peters suggested that Plaintiff put his disinterest in mathematics aside and participate with the rest of the students. Peters also indicated that she would destroy Plaintiff's letter if he refused to comply. Plaintiff complied with her request and took out his mathematics textbook. A physical altercation took place next, beginning with Defendant Peters attempting to tear Plaintiff's letter out of his hands. Plaintiff held onto his letter and Defendant Peters was only able to tear off a part of it. Plaintiff admits to commenting "what is wrong with this broad" in response to the instructor's attempts to destroy his letter. Peters then slapped Plaintiff across the face. Plaintiff rose from his seat and

4

confronted the instructor, who apologized for her behavior.

Plaintiff informed prison authorities that Defendant Peters had slapped him during class. Defendant Peters admitted her actions to the prison authorities. After initially complimenting Plaintiff for not responding with violence, Defendant McCloskey handcuffed Plaintiff and Defendant Plunkett escorted him to a restrictive housing unit, pending further investigation. Plaintiff alleges injuries as a result of Peters' assault. He claims his face became swollen. Plaintiff was taken to the institution's infirmary, but the nurse on duty refused Plaintiff's request to take photos of his face. Further, Defendant Captain Jadlocki refused Plaintiff's requests that he order such photos to be taken.

While in the restrictive housing unit, Defendant Wilt charged Plaintiff with misconduct for failing to obey an order and for using abusive language directed at Peters. Plaintiff maintains that the misconduct was issued in retaliation for his insistence upon pressing criminal charges against Peters. Plaintiff was ultimately found guilty of this misconduct and was sentenced to thirty days of disciplinary custody.

Plaintiff further alleges that Captain Jadlocki would not let him pursue criminal charges against Peters, that Ms. Reifer failed to process his grievances in a timely manner, and that Defendant Wilt and Jadlocki retaliated against him by issuing a false misconduct.

### D. The Eighth Amendment Excessive Force Claim

The Eighth Amendment to the Constitution functions as the primary source of protection in cases where an inmate challenges a prison official's use of force as extreme or unjustified. Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000); see also Whitley v. Albers, 475 U.S. 312, 327 (1986). Specifically, the Eighth Amendment shields inmates from the "wanton and unnecessary infliction of pain." Fuentes v. Wagoner, 206 F.3d 335, 344 (3d Cir. 2000) (citations and internal quotations omitted). However, as the United States Court of Appeals for

5

the Third Circuit has instructed, "not every governmental action affecting the interests an well-being of a prisoner is subject to Eighth Amendment scrutiny." Id.; see also Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."). This means that the Eighth Amendment's proscription against "cruel and unusual" punishment does not extend to *de minimus* uses of force. Smith v. Mensinger, 293 F.3d 641, 648 (3d Cir. 2002). A particular use of force is only considered "cruel and unusual" when it is "repugnant to the conscience of mankind" and "inconsistent with contemporary standards of decency." Whitley, 475 U.S. at 327 (quoting Estelle v. Gamble, 429 U.S. 97, 103 (1976)).

Prison officials are afforded a high degree of deference in the Eighth Amendment context. In reviewing excessive force claims, the court gives prison officials "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are necessary to preserve internal order and discipline and to maintain institutional security." Whitley, 475 U.S. at 321-322 (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1979). This deference "does not insulate from review actions taken in bad faith and for not legitimate purpose, it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice." Id.

The central inquiry, therefore, is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992); see also Mensinger, 293 F.3d at 649 (quoting Brooks, 204 F.3d at 106). To guide our inquiry, the Supreme Court has directed district courts to examine the following factors:

      (1) the need for the application of force;

      (2) the relationship between the need and the amount of force that was used;

      (3) the extent of the injury inflicted;

      (4) the extent of the threat to the safety of the staff and inmates, as reasonably

> perceived by responsible officials on the basis of the facts known to them; and
>
> (5) any efforts made to temper the severity of a forceful response.

Mensinger, 293 F.3d at 649 (quoting Hudson, 503 U.S. at 7).

Here, the Court must determine if a reasonable jury could conclude that Defendant Peters used force with the malicious or sadistic intent to cause harm to Plaintiff. It is not disputed that Defendant Peters slapped Plaintiff, thereby applying some degree of force. However, the parties dispute the extent of physical force used by Defendant Peters. In support of their motion for summary judgment on this claim, Defendants argue that they should not be liable for an Eighth Amendment violation because Plaintiff's injuries were *de minimus*. See Document # 25, pages 6, 9-11. Defendants do not advance any other argument on any of the other factors, including the threshold inquiry - the need for the application of force. Instead, they argue only *de minimus* injury as if that were the conclusive factor instead of only one consideration in a five-prong analysis.

The factual scenario pertinent to the excessive force claim is not disputed and the record evidence is consistent with Plaintiff's own version of the event. The undisputed facts establish that Plaintiff was in a mathematics class room attending a class taught by Defendant Peters. Document # 24-2, page 24. Plaintiff admits that he was writing a letter and not doing his classwork. Id. Plaintiff further admits to being disorderly and disruptive in the classroom by refusing to put the letter away and by refusing to do his mathematics work. Id. Plaintiff's disorderly conduct is supported by the written statements of other inmates who were in the classroom on the day in question. Document # 24-2, Statements of Inmates Cavage, Kinch, Mowery, and Mull, pages 19-24.

Plaintiff argues that in this situation there was no need for the application of force. Plaintiff points out that there were other means and procedures available to Defendant Peters. For example, Plaintiff submits that Peters could have issued a misconduct against him for failing to comply with her request or she could have ordered him to return to his housing unit. Instead,

7

she struck him across the face.

Defendants do not challenge this assertion, instead arguing only that they are entitled to summary judgment because Peters' use of force resulted in "little, if any injury" and was, therefore, *de minimus*. Document # 25, page 6. However, such an argument is not relevant to the question of the need for the use of force in the first place. For example, Defendants have not argued or submitted any record evidence that there was a good-faith need for the use of force in an effort to maintain or restore discipline in the classroom. See e.g., Hudson, 503 U.S. at 7 (quoting Whitley, 475 U.S. at 321). It is entirely possible that Plaintiff's disorderly conduct may have been sufficient to create a need for Peters to use force to quell an escalating situation. However, Defendants have not provided any evidence in this regard and so summary judgment should be denied.

In any event, the seriousness of an injury, while probative, is not determinative. That is to say, *de minimus* injuries do not necessarily establish *de minimus* force to warrant a grant of summary judgment. Mensinger, 293 F.3d at 648-49. See also Rhodes v. Robinson, 612 F.2d 766, 771 (3d Cir. 1979) (the crucial inquiry is the manner of the infliction of the injury, not the injury itself.). As the Supreme Court explained in Hudson, "the extent of injury suffered by an inmate is [but] one factor that may suggest" whether the force applied was necessary or wanton and explicitly rejected a requirement that inmates show a "significant injury" to state a claim for excessive force in violation of the Eighth Amendment. 503 U.S. at 5, 7.

Because Defendants have not submitted any evidence to support the first prong of the excessive force analysis, the Court cannot determine at this juncture on this limited factual record whether there was an appropriate connection between the need for the application of force, the amount of force used, the extent of the threat to the safety of staff and inmates, or efforts made to temper the severity of the forceful response. At a minimum at this point in the proceedings, factual disputes exist regarding whether or not there existed a situation which required the use of force and the amount of force used.

Therefore, Defendants' motion for summary judgment should be denied as to this claim against Defendant Peters.

### E. The Due Process Claims

In this case, Plaintiff's civil rights claim regarding the false misconducts and the unfairness of the hearing are barred by the favorable termination requirement of Heck v. Humphrey [512 U.S. 447 (1994)] and its progeny. In Heck, the Supreme Court held that a state prisoner could not maintain a § 1983 action for damages under the civil rights laws if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence ... unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." 512 U.S. at 487. Later, in Edwards v. Balisok, 520 U.S. 641 (1997), the Supreme Court extended Heck by holding that a state prisoner's § 1983 action challenging a prison disciplinary sanction and seeking "money damages, based on allegations of deceit and bias on the part of the decisionmaker that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983" unless the disciplinary sanction has been overturned or invalidated. 520 U.S. 641, 648. The Supreme Court summarized this so-called "favorable termination requirement" by explaining that a "state prisoner's § 1983 action is barred (absent prior invalidation)-no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)-if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005). See also Hill v. McDonough, 547 U.S. 573 (2006).

So then, the law is well established that a claimant cannot use a civil rights action as a vehicle to circumvent the validity of a prison disciplinary hearing. Thus, in order to recover damages involving conduct which is the subject of a prison misconduct conviction, a plaintiff

9

must prove that the conviction has been reversed or declared invalid by a disciplinary appeal. See Banks v. Hayward, 2007 WL 120045, at * 6 n.7 (W.D. Pa. 2007) (citing Avery v. Nichol, 2000 WL 282903, at *2 (6th Cir. 2000)). Plaintiff makes no such showing here and, as such, he fails to allege facts sufficient to demonstrate that his constitutional rights were violated. Accordingly, Defendants' motion for summary judgment should be granted as to this claim.

Plaintiff additionally claims that Defendants actions in confining him to a restricted housing unit (presumably both during the investigation and as a result of his misconduct charge) violated his due process rights. On this record, the Plaintiff cannot show that his placement in the RHU imposed an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). See Griffin v. Vaughn, 112 F.3d 703 (3d Cir.1997) (holding that 15 months in administrative custody did not impose an atypical and significant hardship on prisoner); Torres v. Fauver, 252 F.3d 141, 150 (3d Cir.2002) (quoting Hewitt v. Helms, 459 U.S. 460, 468 (1983) (a due process claim does not exist if confinement is of a type "that inmates should reasonably anticipate receiving at some point in their incarceration")). As a result, Plaintiff's Fourteenth Amendment due process claim related to Defendant Wilt's disciplinary decision and the Plaintiff's placement in RHU should be dismissed as a matter of law.[1]

Accordingly, Defendants' motion for summary judgment should be granted as to Plaintiff's due process claims.

---

[1] To the extent that the Plaintiff attempts to claim a due process violation based on his subsequent transfer from SCI-Cresson, there is likewise no genuine issue of material fact. It is well-established that inmates have no protected liberty interest in the assignment to a particular institution, facility, or rehabilitation program. See Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Meachum v. Fano, 427 U.S. 215, 224-26 (1976); Young v. Quinlan, 960 F.2d 351, 358 n. 16 (3d Cir.1992).

### F. The Access to Courts Claims

Prisoners have a constitutional right to "adequate, effective and meaningful" access to the courts. Bounds v. Smith, 430 U.S. 817 (1977).[2] In order to state a claim for a denial of the right of access to the courts, a plaintiff must also show actual injury. Lewis v. Casey, 518 U.S. 343. The plaintiff must demonstrate that as a result of the defendant's actions, he lost the ability to present an "arguably actionable claim" against the validity of his sentence under direct or collateral appeal or a claim challenging his conditions of confinement in a civil rights action. Id. at 355. The "impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Id. A plaintiff must allege both an underlying cause of action, whether anticipated or lost, and official acts frustrating the litigation. Christopher v. Harbury, 536 U.S. 403 (2002). See also Oliver v. Fauver, 118 F.3d 175 (3d Cir. 1997) (holding that inmate could not meet the actual injury standard of Lewis v. Casey as a result of the alleged interference with legal mail); Lewis v. Cook County Bd. Of Commissioners, 2001 WL 435694 (7th Cir. 2001) ("To state a claim for the denial of access to the courts, a plaintiff must plead an injury in addition to the simple denial of access to the courts."). Mere conclusory allegations that an inmate suffered prejudice are insufficient to sustain an access to courts claim. Acre v. Walker, 58 F.Supp.2d 39 (W.D. N.Y 1999).

Plaintiff is required to demonstrate to this Court that he suffered an actual injury to an arguably actionable claim. Plaintiff raises two claims which focus on an alleged deprivation of his First Amendment right to access to the courts.[3] Plaintiff alleges that Defendant Jadlocki

---

[2] The Supreme Court has found that access to courts may arise in the context of the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection Clause. See Christopher v. Harbury, 536 U.S. 403, 415 n.12 (2002).

[3] The Supreme Court has identified two general categories of denial of access to courts claims. Christopher v. Harbury, 536 U.S. 403, 412-13 (2002); see also Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety-Div. of State Police, 411 F.3d 427, 441 (3d Cir.2005). First

11

refused Plaintiff's request to press criminal charges against Defendant Peters (Document # 3, page 9) and that Defendant Reifer violated his right to court access by interfering with his ability to pursue a inmate grievance (id. at 10-11).

The Court will first review Plaintiff's claim against Defendant Jadlocki. Plaintiff has not shown that he lost the ability to present an "arguably actionable" claim as "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another" Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973). Put another way, a private citizen does not have the authority or the right to prosecute criminal charges and this Court likewise lacks authority to initiate criminal charges against any individual on Plaintiff's behalf. See e.g. Caracter v. Avshalumov, 2006 WL 3231465, *3 (D.N.J. 2006). Plaintiff's claim is further diminished by his own admission that he was successful in having the appropriate prosecutorial authorities in Cambria County, Pennsylvania, review his case against Peters. Document # 3, page 9. The fact that the authorities in Cambria County declined to prosecute Defendant Peters criminally is of no moment to the analysis here. Defendant Jadlocki did not interfere with or otherwise deprive Plaintiff of his Constitutional rights of access to the courts. Summary judgment should be

---

are "forward-looking" claims which allege that official action frustrates a plaintiff in preparing and filing suit at the present time. Christopher, 536 U.S. at 413. Examples of such claims are where a prisoner-plaintiff alleges the inadequacy of a prison law library or where an inability to pay a filing fee prevents a plaintiff from bringing suit. See id. "The object of such a claim is to remove the barrier so that the plaintiff can pursue the separate claim for relief. In these cases, the constitutional deprivation is demonstrated by the very fact that the plaintiff cannot presently pursue his underlying case until the frustrating condition is removed." Gibson, 411 F.3d at 441. The second category covers "backward-looking" claims which allege that official acts "have caused the loss or inadequate settlement of a meritorious case, the loss of an opportunity to sue, or the loss of an opportunity to seek some particular order of relief.... These cases do not look forward to a class of future litigation, but backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable. The ultimate object of these sorts of access claims, then, is not the judgment *in a further lawsuit*, but simply the judgment in the access claim itself, in providing relief obtainable in no other suit in the future." Christopher, 536 U .S. at 413-14 (citations omitted). This case involves neither a forward-looking claim nor a backward-looking claim.

granted in Defendants' favor on this claim.

Next, Plaintiff claims that Defendant Reifer interfered with his rights to file a grievance. Document # 3, pages 10-11. A prisoner has no constitutional right to any effective grievance procedures or access to any such procedure voluntarily established by the state. Brown v. Thomas, 172 Fed.Appx. 446, at *3 (3d Cir. 2006). See also Hewitt v. Helms, 459 U.S. 460, 467 (1983); Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir.1996); Adams v. Rice, 40 F.3d 72, 75 (4th Cir.1994); Flick v. Alba, 932 F.2d 728, 729 (8th Cir.1991); Carpenter v. Wilkinson, No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb.7, 2000). Because Plaintiff does not have an independent First Amendment right to file a grievance, the motion for summary judgment should be granted.

### G. The Retaliation Claim

Plaintiff alleges that Defendants Wilt and McCloskey retaliated against him by submitting a false misconduct report in order to achieve a harsher disciplinary action against Plaintiff in retaliation for Plaintiff's expressed desire to press criminal charges against Defendants Peters. Document # 3, ¶¶ 48, 53.

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983." See White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir.1990). "Government actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (quoting Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000)).[4]

---

[4] The Third Circuit has directed that district courts should look carefully at allegations of retaliation. "Because of many prisoners' propensity to wield retaliation claims when confronted with disciplinary actions, district courts must view prisoners' retaliation claims with sufficient skepticism to avoid becoming entangled in every disciplinary action taken against a

13

In order to state a *prima facie* case of retaliation, a prisoner plaintiff must demonstrate:

    1) the conduct in which he was engaged was constitutionally protected;

    2) he suffered "adverse action" at the hands of prison officials; and

    3) his constitutionally protected conduct was a substantial or motivating factor in the decisions to discipline him.

Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002) (quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001)).

"[O]nce a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Id. at 334.

Even assuming for the purposes of this motion that Plaintiff can make out a *prima facie* case, his retaliation claim fails. Defendants have provided sufficient evidence to support Plaintiff's guilt of the underlying disciplinary charge. See Carter, 292 F.3d at 159. Plaintiff's own testimony at the misconduct hearing indicates that he admits to being disorderly and refusing to follow Defendant Peters' orders. Document # 24-2, page 30. Plaintiff's testimony in and of itself is sufficient evidence to support his guilt of the underlying charge. Because of his admitted guilt as to the charge (as well as the corroborating testimony of other inmates), Defendants had a "legitimate penological interest" in disciplining Plaintiff. Accordingly, summary judgment should be granted as to the retaliation claim.

---

prisoner." Sims v. Dragovich, 1999 WL 37621 (E.D.Pa. 1999), affirmed, 43 Fed.Appx. 523, 2002 WL 1800793 (3d Cir. 2002).

### III.    CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' motion for summary judgment [Document # 24] be granted in part and denied in part. More specifically, the motion to dismiss should be denied as to the excessive force claim against Defendant Peters and granted in all other respects. Defendants Jadlocki, Plunkett, McCloskey, Reifer and Wilt should be dismissed from this action.

In accordance with the Magistrates Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates Judges, the parties are allowed ten (10) days from the date of service to file written objections to this Report and Recommendation. No extensions of time will be granted. Failure to file timely objections may constitute a waiver of any appellate rights. See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

S/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
Chief U.S. Magistrate Judge

Dated: February 28, 2008